Rofpisj C. J.
 

 Dennis Grady died in Wake county, in 1833. By his will, he gave to his wife, for her life, a tract of land called
 
 “
 
 the Red House,” and three slaves; and, “ after her death, the land to be sold by my executor, and the negroes to be hired out until my youngest grandchild arrives at lawful age, and then sold, and divided equally between my grandchildren, Benjamin W. H. Maderis, Betsy Maderis, Joel B. Maderis, and Martha J. Maderis: the proceeds of the land to be divided equally amongst the above mentioned children, or as many as may be living, as they
 
 *279
 
 come of age.” The will then directs-other land’, and all the “residue of my property of every description to be sold, at such time as my executor shall think most advantageous, the whole to be divided amongst my eight grandchildren, as they come to lawful age, namely, Sally Maderis, Dennis G. Maderis, John W. Maderis, Polly Maderis, Benjamin W. IT. Maderis, Betsy Maderis, Joel B. Maderis, and Martha J. Maderis.” At the date of the will and death of the testator, all the grandchildren resided with their father in Tennessee, and they all survived the widow, who died a few years after the testator. Benjamin W. H. Maderis af-terwards died intestate at the age of nineteen, and the plaintiff is his administrator; and each of the other grandchildren has attained the age of twenty-one. The executor sold the land and other property, and has the proceeds ready for division. The bill claims for the intestate, Benjamin W. IT. Maderis, one-fourth of the produce of “ the Red House,” and of the three negroes and their increase, and one-eighth of the general residue.
 

 It is somewhat singular that there should be such different dispositions of the three portions of the estate. In relation to the proceeds of the slaves, and the residue, there is no difficulty. They are simple gifts, to be equally divided at their lawful age, the former among four named grandchildren, and the latter among eight: and the plaintiff’s intestate was one of each class. They were, plainly, vested legacies, on the death of the testator, and transmissible. But, though not perfectly clear, it seems to be otherwise as to the proceeds of “ the Red House.” They are not given to the four grandchildren absolutely, as other parts of the property are. As first made, they are so given; but that’ is qualified by adding, “ or as many as may be living, as they become of age.’’ The gift, then, is to such of them only as may be living at some particular time; and the question is, what time? From the structure of the sen
 
 *280
 
 tence, the apparent sense is, that such as may be living as, or when, they respectively come of full age; that is, live to that age. It is said that this not only requires an alteration of the words, but imputes the absurdity to the will of requiring the legatee to be alive when he comes to full age, since that must of necessity be: and thence it is argued that the meaning is, that the gift is to as many as may be
 
 now
 
 living, that is, at the making of the will, or death of the testator, payable as they come of age. But there is nothing to show that the testator was looking to the probability of the pre-decease of his grandchildren. If he had been, he would probably have provided for the same contingency in respect to the other funds given among the same persons. And the supposed absurdity cannot affect the question ; for it is not an uncommon form of expression in wills for making a gift intended for one at, or if he attain, a certain age. Besides, the same objection applies equally to the other construction ; since it is equally absurd to order a payment to a dead person at twenty-one, as it is to make a gift to such a person. In respect to the proceeds of “ the Red House,’’ both the payment and the gift are, as it seems to this Court, on the same contingency of the respective children’s coming to full age; and, therefore, the whole goes to the three grandchildren who have attained that age.
 

 Per Curiam. Decree accordingly.